# STATE OF CONNECTICUT *v.* DEMETRICE L. LEWIS
## (SC 18369)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan, Eveleigh and
Vertefeuille, Js.*

---

\* This case was scheduled to be argued before a panel of this court
consisting of Chief Justice Rogers and Justices Norcott, Palmer, Zarella,
McLachlan, Eveleigh and Vertefeuille. Although Justice Palmer was not
present when the case was argued before the court, he read the record and
briefs and listened to the recording of oral argument prior to participating
in this decision.

Argued September 7, 2011—officially released February 28, 2012

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Brian Leslie*, assistant state's attorney, for the appellant (state).

*Pamela S. Nagy*, special public defender, for the appellee (defendant).

*Opinion*

McLACHLAN, J. A jury found the defendant guilty of the following four crimes: (1) possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b); (2) possession of narcotics with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b); (3) possession of drug paraphernalia with intent to use in violation of General Statutes § 21a-267 (a); and (4) possession of drug paraphernalia with intent to use within 1500 feet of a school in violation of § 21a-267 (c). The Appellate Court reversed the judgment of conviction as to all four charges due to the trial court's failure to instruct the jury on specific intent. *State* v. *Lewis*, 113 Conn. App. 731, 740, 749, 967 A.2d 618 (2009). Additionally, concluding that the record contained insufficient evidence to support the conviction of the second and fourth charges and, as a result, that a new trial would violate the double jeopardy clause, the Appellate Court remanded the case for a new trial on the first and third charges, but directed the trial court to render judgment of not guilty of the second and fourth charges. Id. In this certified appeal, the state challenges only the Appellate Court's insufficiency determination and remand order with respect to the second and fourth charges. To determine whether the

defendant should be subject to retrial for violating §§ 21a-278a (b) and 21a-267 (c), and, thus, whether the remand order was proper, we must review: (1) whether the evidence of the defendant's intent to sell narcotics within the prohibited area was sufficient to convict the defendant under § 21a-278a (b); and (2) whether there was sufficient evidence in the record to classify the school in question, the Timothy Dwight School, as an elementary or secondary school under § 21a-267 (c).[1] We conclude that the Appellate Court properly held that there was insufficient evidence to support the defendant's conviction under § 21a-278a (b), but improperly held that there was insufficient evidence to support his conviction under § 21a-267 (c). Accordingly, we affirm in part and reverse in part the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following facts that the jury reasonably could have

---

[1] We granted certification to appeal limited to the following questions: (1) "Whether, for the purposes of proof of . . . § 21a-278a (b), a majority of the Appellate Court panel properly held that there was insufficient evidence of the defendant's intent to sell the narcotics that he possessed at the specific location where he was apprehended, which was within 1500 feet of a school?"; and (2) "Whether, for purposes of proof of both . . . § 21a-278a (b), possession of narcotics with intent to sell within 1500 feet of a school, and . . . § 21a-267 (c), possession of drug paraphernalia with intent to use within 1500 feet of a school, a majority of the Appellate Court panel properly held that there was insufficient evidence that the school in question was an elementary or secondary school?" *State* v. *Lewis*, 292 Conn. 906, 973 A.2d 105 (2009).

Although the second certified question addresses whether the evidence was sufficient to satisfy both §§ 21a-278a (b) and 21a-267 (c), we observe that the double jeopardy clause prohibits retrial if the state failed to present sufficient evidence to establish the defendant's guilt beyond a reasonable doubt on any one element of an offense. See, e.g., *State* v. *Padua*, 273 Conn. 138, 178, 869 A.2d 192 (2005) (retrial barred and defendant entitled to acquittal when evidence was insufficient to support conviction). Because we conclude that the state failed to provide sufficient evidence of the defendant's intent to sell narcotics in the place where he was arrested, thus precluding retrial, we need not determine whether the record contained sufficient evidence of the additional element that the Timothy Dwight School was an elementary or secondary school.

found. "On June 3, 2005, at approximately 8:24 p.m., officers of the New Haven police department, including Luis Rivera, were dispatched to the intersection of North Frontage Road and Orchard Street after having received complaints of a robbery with a weapon at that location. The robbery suspects were described as three seventeen to eighteen year old men, one wearing a gray hooded sweatshirt and white 'uptown' sneakers, and the other two wearing black hooded sweatshirts and blue jeans. In the area of 49 Waverly Street, Rivera and another officer stopped and detained the defendant, who was riding a bicycle and wearing dark clothing, and Joshua Williams, who was walking and wearing a gray hooded sweatshirt. Rivera stopped Williams and the other officer stopped the defendant, who had started to pedal his bicycle away as Williams was being detained.

"Rivera conducted a warrant check on the defendant and found that there was an active warrant for his arrest. Rivera placed the defendant under arrest and conducted a thorough [pat down] of his person. Rivera discovered a clear sandwich bag in the defendant's pocket within which there were nineteen Ziploc bags, each containing a white, rock like substance, which a field test revealed to be crack cocaine. Rivera also found $116 in the defendant's front pocket, $160 in another pocket within the front pocket and $600 in his rear pocket. The money was in denominations of twenty, ten, five and one dollar bills. In the defendant's rear pocket, Rivera also found a razor blade and a paper bag containing medium and small Ziploc bags. Thereafter, the defendant was charged with possession of narcotics with intent to sell by a person who is not drug-dependent, possession of narcotics with intent to sell within 1500 feet of a school, possession of drug paraphernalia with intent to use and possession of drug

paraphernalia with intent to use within 1500 feet of a school.

"At trial, Michael Wuchek, a detective with the New Haven police department, testified as an expert witness on the street level sale of narcotics. He opined that the quantity of narcotics, the packaging of the narcotics, the empty bags, the razor blade and the small denominations of money found in the defendant's pockets were consistent with the street level sale of $10 bags of crack cocaine. Wuchek also testified that street level dealers often work in teams at a specific location, that a lookout riding on a bicycle commonly would be employed during a street level sale to identify customers or the police and that street level dealers typically would attempt to run away to avoid the police.

"Anwar Houwari, a civil engineer and projects manager and record keeper in the engineering department of the city of New Haven, also testified. After examining an engineering map of the city of New Haven, Houwari determined that the distance between the Timothy Dwight School and 49 Waverly Street, where the defendant was stopped, was 1050 feet." Id., 733–35.

In his appeal to the Appellate Court, the defendant challenged his conviction, claiming that: (1) the trial court improperly failed to instruct the jury on specific intent, which was relevant to all four charges; (2) there was insufficient evidence of the defendant's specific intent to sell narcotics at any particular location as required by § 21a-278a (b); and (3) there was insufficient evidence of whether the Timothy Dwight School was a "public or private elementary or secondary school" as required by both §§ 21a-267 (c) and 21a-278a (b). With respect to the defendant's first argument, the Appellate Court concluded that the trial court instructed the jury on general intent but did not define specific intent, even though all of the crimes at issue were specific intent

crimes. *State* v. *Lewis*, supra, 113 Conn. App. 739. Consequently, the failure to instruct the jury on specific intent constituted reversible error. Id., 740.

The Appellate Court then reviewed the sufficiency of the evidence supporting the defendant's conviction of §§ 21a-278a (b) and 21a-267 (c) to determine whether retrial on those counts would violate the prohibition against double jeopardy.[2] Upon review of the record, the Appellate Court concluded that there was insufficient evidence that the defendant intended to sell narcotics at a location that was within 1500 feet of a school. Id., 749. Because intent to sell at a particular location is an element of the crime of possession of narcotics with intent to sell within 1500 feet of a school in violation of § 21a-278a (b), retrial on that charge was barred. Id., 745. A majority of the court additionally concluded that the defendant could not be retried on that charge or on the charge of possession of drug paraphernalia with intent to use within 1500 feet of a school in violation of § 21a-267 (c) because there was insufficient evidence that the Timothy Dwight School was an elementary or secondary school, an element of both offenses. Id. Consequently, the Appellate Court directed the trial court to render judgment of not guilty of violating §§ 21a-267 (c) and 21a-278a (b).[3] This certified appeal followed. Additional facts will be set forth as necessary.

[2] The defendant did not appeal his conviction of possession of narcotics with intent to sell by a person who is not drug-dependent and possession of drug paraphernalia with intent to use in violation of §§ 21a-278 (b) and 21a-267 (a) on the ground of insufficient evidence. Consequently, the double jeopardy clause does not prevent the defendant's retrial on either charge.

[3] Judge Bishop concurred in the majority's reversal on the basis of the trial court's failure to instruct the jury on specific intent, but dissented from the majority's resolution of the defendant's insufficiency claims. *State* v. *Lewis*, supra, 113 Conn. App. 749. Judge Bishop would have found sufficient evidence in the record to support the defendant's conviction under both §§ 21a-267 (c) and 21a-278a (b), and, as a result, would have remanded the case for a new trial on all four charges. Id., 757.

The state argues that the Appellate Court improperly concluded that the evidence was insufficient to support the defendant's conviction under §§ 21a-278a (b) and 21a-267 (c) because the record establishes: (1) that the defendant intended to sell the narcotics in his possession at the particular location where he was apprehended; and (2) that this location was within 1500 feet of an elementary or secondary school. We address each of the state's claims in turn.

The two part test this court applies in reviewing the sufficiency of the evidence supporting a criminal conviction is well established.[4] "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Grant*, 219 Conn. 596, 599–600, 594 A.2d 459 (1991).

"In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence." *State* v. *Delgado*, 247 Conn. 616, 620, 725 A.2d 306 (1999). "[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever

---

[4] To the extent that the defendant's sufficiency claims were unpreserved, we observe that "any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of [*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989)]. There being no practical significance, therefore, for engaging in a *Golding* analysis of an insufficiency of the evidence claim, we will review the defendant's challenge to his conviction . . . as we do any properly preserved claim." *State* v. *Adams*, 225 Conn. 270, 276 n.3, 623 A.2d 42 (1993).

inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Grant*, supra, 219 Conn. 604. The rule does not require that "each subordinate conclusion established by or inferred from evidence, or even from other inferences, be proved beyond a reasonable doubt." *State* v. *Crafts*, 226 Conn. 237, 244, 627 A.2d 877 (1993). As we have observed, "proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Aloi*, 280 Conn. 824, 842, 911 A.2d 1086 (2007).

Although "[t]here is no distinction between direct and circumstantial evidence as far as probative force is concerned"; *State* v. *Perez*, 183 Conn. 225, 227, 439 A.2d 305 (1981); "[b]ecause [t]he only kind of an inference recognized by the law is a reasonable one . . . any such inference cannot be based on possibilities, surmise or conjecture. . . . It is axiomatic, therefore, that [a]ny [inference] drawn must be rational and founded upon the evidence. . . . However, [t]he line between permissible inference and impermissible speculation is not always easy to discern. When we infer, we derive a conclusion from proven facts because such considerations as experience, or history, or science have demonstrated that there is a likely correlation between those facts and the conclusion. If that correlation is sufficiently compelling, the inference is reasonable. But if the correlation between the facts and the conclusion is slight, or if a different conclusion is more closely correlated with the facts than the chosen conclusion, the inference is less reasonable. At some point, the link between the facts and the conclusion becomes

so tenuous that we call it speculation. When that point is reached is, frankly, a matter of judgment." (Citations omitted; internal quotation marks omitted.) *State* v. *Copas*, 252 Conn. 318, 338–39, 746 A.2d 761 (2000).

I

We first address the state's claim that the record contains sufficient evidence to support the defendant's conviction of possession of narcotics with intent to sell within 1500 feet of a school under § 21a-278a (b). The state maintains that the evidence it presented at trial proved beyond a reasonable doubt that the defendant intended to sell narcotics at the particular place where he was stopped by the police, 49 Waverly Street, which was within 1500 feet of a school. In response, the defendant argues that although the state presented sufficient evidence whereby the jury reasonably could have inferred that he had intended to sell drugs, it failed to carry its burden of proving that he intended to sell drugs at 49 Waverly Street. We agree with the defendant.

Section 21a-278a (b) provides in relevant part: "To constitute a violation of this subsection, an act of transporting or possessing a controlled substance shall be with *intent to sell or dispense in or on, or within one thousand five hundred feet of*, the real property comprising a public or private elementary or secondary school . . . ." (Emphasis added.) In *State* v. *Denby*, 235 Conn. 477, 483, 668 A.2d 682 (1995), we interpreted § 21a-278a (b) to require the state to prove not only that a defendant possessed narcotics within the statutory distance from a school with the intent to sell the narcotics somewhere, but also that the defendant "intended to sell or dispense those drugs in his or her possession at a specific location, which location happens to be within [1500] feet of an elementary or secondary

school."[5] More recently, we reaffirmed this interpretation, stating that "[m]ere possession of narcotics with an intent to sell at some unspecified point in the future, at some unspecified place, is not enough [to prove a violation of § 21a-278a (b)]." (Internal quotation marks omitted.) *State* v. *Hedge*, 297 Conn. 621, 659–60, 1 A.3d 1051 (2010), quoting *State* v. *Lewis*, supra, 113 Conn. App. 747. Accordingly, we review the sufficiency of the state's evidence under § 21a-278a (b) mindful that the state bears the burden of proving that the defendant intended to sell or dispense narcotics at a particular place. Further, because the defendant's intent is an element of the crime, the state must establish that intent beyond a reasonable doubt.

Whether a defendant possesses the requisite intent is a question of fact. *State* v. *Hedge*, supra, 297 Conn. 658. "[D]irect evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Internal quotation marks omitted.) *State* v. *Aloi*, supra, 280 Conn. 843. Although the trier of fact may consider the cumulative impact of circumstantial evidence, and may draw all *reasonable* inferences therefrom, we emphasize that those inferences "cannot be based on possibilities, surmise or conjecture." (Internal quotation marks omitted.) *State* v. *Copas*, supra, 252 Conn. 338.

In applying this standard, the lower courts have generally found that evidence of an actual or attempted sale is sufficient to prove beyond a reasonable doubt that a defendant intended to sell narcotics at a particular location. See, e.g., *State* v. *Cohens*, 62 Conn. App. 345,

---

[5] In 1992, the General Assembly amended the statute to increase the distance to school property from 1000 to 1500 feet. See Public Acts 1992, No. 92-82.

355, 773 A.2d 363 (finding sufficient evidence of intent to sell in proscribed area when officer observed defendant engage in transaction in area known for drug activity), cert. denied, 256 Conn. 918; 774 A.2d 139 (2001); *State* v. *Knight*, 56 Conn. App. 845, 848, 852–53, 747 A.2d 13 (2000) (finding sufficient evidence of intent to sell in proscribed area when officer asked for " 'ten' " and defendant showed officer marijuana and cocaine).

Without evidence of an actual or attempted sale, it is of course more challenging, but not impossible, for the state to establish intent to sell at a particular location. We recently clarified that our focus in determining whether there is sufficient evidence to support a conviction under § 21a-278a (b) is whether the state produced "evidence that the defendant engaged in conduct reflecting an intent to sell drugs at some location within the proscribed area . . . ." *State* v. *Hedge*, supra, 297 Conn. 661. In *Hedge*, we considered the defendant's possession of 88 Ziploc bags of cocaine, 100 " 'slabs' " of cocaine, 15 "folds" of heroin and $59 in cash. The state also presented testimony that when the arresting officers stopped the defendant for failing to use a turn signal, the defendant was in an area "known for heavy narcotics trafficking," that money was " 'strewn' " within the defendant's vehicle, and that the defendant had been " 'on his supposed mission to buy milk for [two and one-half] hours.' " Id., 659. Viewing this evidence in the light most favorable to sustaining the verdict, we stated that "the large quantity of drugs . . . support[ed] an inference that the defendant had intended to sell the drugs *somewhere*." (Emphasis in original.) Id. The other evidence presented by the state, however, did not provide an adequate basis for concluding that the place the defendant intended to sell the narcotics was the place of his arrest. Id., 661. Consequently, we held that the evidence was insufficient to support the defendant's conviction for violating § 21a-278a (b). Id.

The facts of the present case are analogous to the facts in *Hedge*. Here, as in *Hedge*, the jury was presented with evidence from which it reasonably could have concluded beyond a reasonable doubt that the defendant intended to sell the drugs in his possession. For example, upon the defendant's arrest, the police seized nineteen Ziploc bags containing crack cocaine, a razor blade and $876 in small denominations of money distributed among the defendant's pockets. Wuchek testified that the possession of these items suggested an intent to sell drugs, as opposed to an intent to retain them for personal use. He explained that crack cocaine is usually packaged in small Ziploc bags, referred to as "dimes," and that a razor blade is used to break up pieces of cocaine into smaller pieces for sale. Finally, he testified that street level sellers typically possess small denominations of money to facilitate quick sales and that they distribute this money in various places on their body to reduce monetary losses if robbed.

Although the defendant's possession of drugs and drug paraphernalia is probative of his intent to sell drugs somewhere, as we stated in *Hedge*, such evidence on its own is insufficient to establish that the defendant intended to sell drugs within the proscribed area. In the present case, the state presented no evidence of an actual or attempted sale. Additionally, as in *Hedge*, the stop of the defendant at that particular location was merely fortuitous for two reasons. First, the arresting officers detained the defendant because Williams resembled the description of a robbery suspect, not because they had any reason to suspect that the defendant intended to sell drugs at that location. Second, the evidence suggests that the defendant was in transit, moving through the area. For example, according to Rivera's testimony, the defendant was in motion, riding his bicycle, when Rivera arrived. According to the testimony of defense witness Shirley Warren, a neighbor of

the defendant's, the defendant was riding his bicycle but pulled over briefly when he recognized his neighbors. Unlike in *State* v. *Reid*, 123 Conn. App. 383, 398, 1 A.3d 1204, cert. denied, 298 Conn. 929, 5 A.3d 490 (2010), in which the Appellate Court found sufficient evidence of the defendant's intent to sell in the proscribed area when he was in a known drug area for an "extended period of time" with drugs and drug paraphernalia in his possession, there is no indication in the record that the defendant was in the area for an amount of time sufficient to imply that he was doing more than passing through when the police detained him. Finally, we observe that 49 Waverly Street was approximately one block away from the defendant's home. Thus, the defendant was apprehended within his neighborhood—the area he necessarily would pass through every time he left or returned to his home. As we stated in *State* v. *Hedge*, supra, 297 Conn. 660, quoting *State* v. *Lewis*, supra, 113 Conn. App. 747: " 'Quite obviously, if [a person] is apprehended while coincidentally passing through a location, there is no logical inference that he intended to sell at the location of apprehension.' "[6]

The state points to other evidence in the record in an attempt to distinguish the present case from *Hedge* and to support its argument that the record contains an adequate basis for concluding that the defendant intended to sell narcotics at 49 Waverly Street. We find

---

[6] The state contends that the present case is distinguishable from *Hedge* because the defendant here was accessible and open to approach on a bicycle, unlike the defendant in *Hedge*, who was driving an automobile. We question whether the difference between these two vehicles supports the state's conclusion. Nevertheless, we recognize that under certain factual circumstances, different modes of transportation and the speed thereof may bolster other evidence that supports or contradicts an inference of intent to sell in a certain location. This is not such a case. Without further evidence of the defendant's intent to sell drugs at 49 Waverly Street, the alleged accessibility of a bicyclist as opposed to a driver does not lend the state's case the cumulative force it needs to sustain its burden.

that the additional evidence fails both to distinguish the present case from *Hedge* and to tie the defendant's intent to sell drugs to 49 Waverly Street. Specifically, evidence of Williams' presence, the defendant's bicycle, the defendant's preparations, and his location in his own neighborhood, as elucidated by Wuchek's testimony, is insufficient to prove beyond a reasonable doubt that the defendant intended to sell crack cocaine at 49 Waverly Street.

First, contrary to the state's argument, evidence that the defendant was riding a bicycle next to Williams fails to raise a logical inference of immediate drug trafficking at that location. The parties presented testimony that when the officers arrived, the defendant was on his bicycle next to Williams, who was walking. Wuchek testified that street level sellers of narcotics often work in teams, with one person handling the drugs on foot and another person on a bicycle or standing at a corner as a lookout. Despite their juxtaposition, evidence of any complicity or communication between the defendant and Williams, suggesting that their proximity was more than mere chance, is entirely absent. The state, in fact, admits that it did not offer evidence of any communication or interaction between the defendant and Williams. Besides the coincidence that the defendant was on a bicycle and Williams was on foot, there is no indication that the kind of teamwork Wuchek described was occurring in this particular case. In fact, if the defendant and Williams were operating together in the way Wuchek testified street level sellers often do, one would expect that the defendant, as the lookout on a bicycle, would not also be the person holding the drugs, money and drug paraphernalia. Moreover, the officers at the scene evidently did not suspect Williams of any wrongdoing to justify further detention, because they released him once they verified that he was not the robbery suspect they were seeking. At most, if the

jury credited Warren's testimony, one could conclude that the defendant engaged in innocent social conversation for a few minutes with Williams, Warren and Warren's sister. For the jury to infer complicity between Williams and the defendant without evidence of any connection between Williams and the defendant's drug activities, they would have to engage in pure speculation.

Second, even if the defendant and Williams were confederates, the evidence suggests that the defendant was in transit. To support its contention that the defendant was not merely coincidentally passing through the prohibited area but, rather, was actively selling drugs, the state presented Wuchek's testimony that drug dealers often take certain preparations and defensive measures when selling drugs, such as layering their money like the defendant did in the present case. The state, however, did not present any evidence that dealers would not institute these same precautions before or after a sale when drugs and money would also be on their person. A conclusion that the defendant intended to sell at 49 Waverly Street—as opposed to being en route to or from a different place where he intended to peddle narcotics, when he would be just as vulnerable to attack—would require the jury to speculate among equally likely possibilities. Consequently, although such preparations and protective measures are probative of an intent to sell, we conclude that they fail to raise a permissible inference of an intent to sell at a particular location.

Finally, while we recognized in *Hedge* that evidence of an area's reputation as a heavy drug trafficking area might make it more likely that a defendant intended to sell drugs in that location, we concluded that such evidence was insufficient to raise an inference of intent out of the realm of speculation. *State* v. *Hedge*, supra, 297 Conn. 660–61 ("although the fact that Marina Village

is a place where drugs frequently are sold might make it more likely that the defendant was planning to sell drugs there as opposed to some other discrete location, one can only speculate as to whether the defendant intended to sell drugs at or within 1500 feet of [the prohibited area]"). Regardless, the state's evidence of the character of the neighborhood consisted only of Wuchek's statement that he "probably" had made more than twenty arrests in the area during the ten years that he has been a New Haven police officer.[7] More importantly, the Waverly Street area was where the defendant lived. Wuchek testified that street level dealers typically restrict their activities to places where they or their family live because of their familiarity with the residents and terrain; however, one's neighborhood is also one's home, the place where one relaxes, socializes and engages in an untold number of other legitimate activities. Given the tremendous range of possible lawful reasons the defendant could have had for being near his home, the evidence presented by the state attempting to correlate the facts with its chosen conclusion appears so tenuous that it shades into pure speculation. Accordingly, we conclude, like the Appellate Court, that Wuchek's testimony, alone and cumulatively, is "too slender a reed on which to draw the inference of intent to sell at the precise location of apprehension . . . ." *State* v. *Lewis*, supra, 113 Conn. App. 749 n.11.

---

[7] Wuchek testified as follows:

"[The Prosecutor]: Specifically, have you conducted surveillance of street level drug deals in the area of George and Waverly Streets in the past?

"[Wuchek]: Yes. I have made arrests there.

"[The Prosecutor]: How many times?

"[Wuchek]: I couldn't tell—I couldn't even give you an honest answer, many.

"[The Prosecutor]: More than ten?

"[Wuchek]: Yes.

"[The Prosecutor]: More than twenty?

"[Wuchek]: Probably."

In sum, in the present case, as in *Hedge*, we conclude that, without the application of surmise or conjecture, the state failed to prove that the defendant had engaged in any activity, suspicious or otherwise, that would give rise to a reasonable inference that he planned to sell drugs at or within 1500 feet of the Timothy Dwight School. See *State* v. *Hedge*, supra, 297 Conn. 660. The cumulative force of the state's evidence, even when viewed in the light most favorable to sustaining the verdict, was insufficient to establish beyond a reasonable doubt the defendant's intent to sell narcotics at 49 Waverly Street. Accordingly, the Appellate Court properly concluded that the defendant's conviction of sale of narcotics with intent to sell within 1500 feet of a school in violation of § 21a-278a (b) was not supported by sufficient evidence and must be reversed. Moreover, because the prohibition against double jeopardy bars retrial of that offense, the Appellate Court properly remanded the case with direction to render judgment of not guilty as to that charge.

II

We now turn to the state's claim that the Appellate Court improperly concluded that the record contained insufficient evidence to support the defendant's conviction of possession of drug paraphernalia with intent to use within 1500 feet of a school under § 21a-267 (c). Specifically, the state argues that the evidence contained in the record is sufficient to prove beyond a reasonable doubt that the Timothy Dwight School was an elementary or secondary school. Section 21a-267 (c) provides in relevant part: "Any person who violates subsection (a) or (b) of this section[8] in or on, or within one thousand five hundred feet of, the real property

---

[8] The defendant was charged under subsection (a) of § 21a-267, which provides in relevant part: "No person shall . . . possess with intent to use drug paraphernalia . . . ."

comprising a public or private elementary or secondary school and who is not enrolled as a student in such school shall be imprisoned for a term of one year . . . ." Thus, the classification of the school in question as an elementary or secondary school is an element of the offense that the state must establish beyond a reasonable doubt.[9]

The following facts are relevant to the resolution of this claim. Clifford Daniels, the district supervisor of the board of education of the city of New Haven, testified that the Timothy Dwight School is a school in his district. Daniels also testified that the Timothy Dwight School is a public school. Lastly, the jury heard Daniels' partial response to the prosecutor's query regarding what grades were taught at the Timothy Dwight School.

---

[9] Although §§ 21a-278a (b) and 21a-267 (c) both provide an enhanced penalty if a specified drug violation occurs within a school zone, the intent requirements of the two statutes differ. As discussed in part I of this opinion, § 21a-278a (b) requires proof of a defendant's specific intent to sell in a particular area, which happens to be within 1500 feet of an elementary or secondary school. In contrast, § 21a-267 (c) does not require proof of a defendant's specific intent to engage in a prohibited act in a particular location. Unlike § 21a-278a (b), § 21a-267 (c) does not contain the term "intent," or any other mental state, and we decline to read such an intent requirement into § 21a-267 (c). Thus, with respect to § 21a-267 (c), the mere fact that the defendant was within a school zone when he violated § 21a-267 (a) is sufficient, and the state is not required to show additionally that the defendant intended to be in that particular area when he violated subsection (a). Consequently, we review the sufficiency of the evidence supporting the defendant's conviction under § 21a-267 (c) only for proof that the defendant's violation of § 21a-267 (a) occurred within 1500 feet of an elementary or secondary school.

Although § 21a-267 (c) does not articulate a specific intent requirement, it incorporates § 21a-267 (a), which does require a showing of specific intent. Therefore, because the violation of § 21a-267 (a) was a necessary element of § 21a-267 (c), the Appellate Court's reversal of the defendant's conviction under § 21a-267 (a) for instructional error required the reversal of § 21a-267 (c). We review the sufficiency of the evidence as to the violation of § 21a-267 (c) in order to determine whether the defendant may be retried on that charge, or whether a judgment of acquittal is required. Because we conclude that the evidence was sufficient as to that charge, the case must be remanded for a new trial.

Daniels stated, "The grades are from . . ." before defense counsel objected on the basis of relevance and potential prejudice to the defendant. The trial court then excused the jury, and defense counsel expressed concern that it would prejudice the defendant if the jury heard that young children attended the school. The state responded that the question was necessary for it to prove that the defendant was not enrolled as a student at that school, as required by § 21a-267 (c). The trial court appears to have partially sustained the objection by stating that the state could not elicit the range of grades present at the school, but that the state could ask the witness to name the highest grade level at the school. The parties resolved their dispute by stipulating that the defendant was not enrolled as a student at the Timothy Dwight School at the time of the offense. It is clear from this conversation that the parties' disagreement concerned the revelation to the jury of the young age of the students, which would become apparent from testimony concerning the lowest grade, but would not be evident from the fact that the school contained grade levels.

The defendant argues that Daniels' partial statement, "The grades are from . . ." is not part of the evidentiary record because the court's refusal to allow the state to ask the grade range was "tantamount to sustaining the objection." If the objection had been sustained, the question and the partial response could not be considered, even in the absence of a motion to strike. See *Hackenson* v. *Waterbury*, 124 Conn. 679, 684, 2 A.2d 215 (1938). Even assuming that the trial court partially sustained the defendant's objection, however, the parties' discussion with the trial court occurred while the jury was excused. When the jury returned, the state resumed questioning on a different subject. The court did not state on the record that the objection was sustained, nor did the defendant seek to strike the question

and partial response from the record. The jury was not informed explicitly or implicitly that the court had sustained the objection.[10] Indeed, even if the jury had been privy to the trial court's discussion with counsel, it would have been aware, at most, that the defendant had argued, and the court had agreed, that testimony on the grade range should be excluded, but that the defendant did not object to the fact that the school contained grades. Consequently, when the trial court instructed the jury that it could consider only evidence that was admitted and not evidence that had been stricken from the record or offered and refused,[11] the jury was not informed that it could not consider the state's question or the witness' partial response. Thus, the jury could properly draw reasonable inferences from Daniels' statement "The grades are from . . ." including the inference that the Timothy Dwight School contained more than one grade.

We believe that it is within the common understanding that a public school with more than one grade level is an elementary or secondary school. "Jurors are not expected to lay aside matters of common knowledge

[10] In support of his argument that the court implicitly sustained the objection, the defendant cites *Young* v. *State*, 254 Ind. 379, 386, 260 N.E.2d 572 (1970). In *Young*, the Indiana Supreme Court found that the trial court had sustained an objection to testimony when it admonished the jury not to consider the witness' testimony. Id. *Young* is clearly distinguishable from the present action where the trial court gave no indication to the jury of having made any ruling on the objection. Similarly, we disagree with the defendant's argument that this court's decision in *State* v. *Bausman*, 162 Conn. 308, 294 A.2d 312 (1972), compels us to find that the partial response was excluded from the evidentiary record. In *Bausman*, the court sustained the objection in the jury's presence, even though it did not rule on the motion to strike. Id., 313. In contrast, the jury here was not aware of any ruling on the objection.

[11] The court instructed the jury as follows: "[Y]ou are to consider only such evidence as was admitted, and if some evidence was given but stricken from the record, or, if some evidence was offered and refused, you must not consider it and you must dismiss it from your minds. Nor should you draw any inference from any question whose answer was stricken."

or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 157, 869 A.2d 192 (2005). Further, "the definition of words in our standard dictionaries is taken as a matter of common knowledge which the jury is supposed to possess." *State* v. *Asherman*, 193 Conn. 695, 737, 478 A.2d 227, cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1984). The dictionary defines "public school" as "a school, [usually] for primary or secondary grades, that is maintained at public expense." Random House Webster's College Dictionary (2001); see also Webster's Third New International Dictionary (1961) ("a tax-supported school controlled by a local governmental authority [specifically] an elementary or secondary school in the [United States] providing free education for the children of residents of a specified area"). Similarly, it defines "grade school" as "elementary school," and describes "elementary school," "secondary school" and "high school" in terms of their respective grade levels.[12] Webster's Third New International Dictionary, supra. The definition of grade, in fact, specifically refers to these types of schools, stating: "a position or level in a course of advancement or decline

---

[12] "[E]lementary school" is defined as "a school giving instructions in rudimentary subjects in six to eight grades, often with a kindergarten." Random House Webster's College Dictionary, supra. "[S]econdary school" is defined as "a high school or a school of corresponding grade ranking between a primary school and a college or university." Id. "[H]igh school" is defined as "a school attended after elementary school or junior high school and [usually] consisting of grades 9 or 10 through 12." Id. Similarly, Webster's Third New International Dictionary, supra, defines "elementary school" as "a school in which elementary subjects . . . are taught to children from about six to about twelve years of age which in the [United States] covers the first six or eight grades—compare secondary school" and "secondary school" as "a school more advanced in grade than an elementary school . . . ."

or in a scale of ranks, qualities, or orders . . . as . . . one of the successive levels of a [usually] elementary or secondary school course that [usually] represents a year's work . . . ." Id. Therefore, based upon the common understanding of these terms, a juror could reasonably infer that a public school with more than one grade would include elementary and secondary schools.

The Appellate Court, on the other hand, found that there are public schools that are neither elementary nor secondary schools, such as preschools and adult education schools. *State* v. *Lewis*, supra, 113 Conn. App. 743. While we agree that public freestanding preschools and adult education schools exist, we disagree that it is within the common knowledge of a juror that a *graded* public school encompasses preschools and adult education schools in addition to elementary and secondary schools. Significantly, the definitions of "public school" and "grade," as already cited, do not refer to preschool or adult education classes. Nor does the dictionary define preschool or adult education in terms of grades or grade levels.[13] The present case presents a slightly more nuanced inference for a jury than in *State* v. *King*, 289 Conn. 496, 522, 958 A.2d 731 (2008) (finding sufficient evidence that school in question was secondary school where witnesses testified that school was called "Kolbe Cathedral High School"), because an indicative word such as "high school" is not part of the school's name. Nevertheless, we find that case instructive for the proposition that the jury may apply its "common knowledge about the familiar topic of school" to the evidence. Id. Construing the evidence in the light most favorable to sustaining the verdict, we presume that

---

[13] Random House Webster's College Dictionary, supra, defines "preschool" as "a school or nursery for preschool children" and "of, for, or concerning a child between infancy and kindergarten age." Webster's Third New International Dictionary, supra, defines "adult education" as "lecture or correspondence courses for adults [usually] not otherwise engaged in formal study."

the jury understood the meaning of the words "public school" and "grade" according to their common usage, as found in the dictionary. We conclude that the state presented sufficient evidence to establish that the Timothy Dwight School was a public elementary or secondary school within the meaning of § 21a-267 (c).

For the foregoing reasons, we conclude that the Appellate Court properly determined that the record contained insufficient evidence of the defendant's intent to sell narcotics at the location of his arrest as required by § 21a-278a (b), and properly ordered that the trial court render judgment of not guilty as to the charge of possession of narcotics with intent to sell within 1500 feet of a school; however, we conclude that the Appellate Court improperly determined that there was insufficient evidence that the Timothy Dwight School was an elementary or secondary school, as required by § 21a-267 (c), and improperly ordered the trial court to render judgment of not guilty as to the charge of possession of drug paraphernalia with intent to use within 1500 feet of a school. Because of the instructional error, however, a new trial is required.

The judgment of the Appellate Court is reversed only as to the charge of possession of drug paraphernalia with the intent to use within 1500 feet of a school and the case is remanded to that court with direction to reverse the judgment of the trial court as to that charge and to remand the case to the trial court for a new trial on that charge; the judgment of the Appellate Court is affirmed in all other respects.

In this opinion ROGERS, C. J., and NORCOTT, PALMER and ZARELLA, Js., concurred.

EVELEIGH, J., with whom VERTEFEUILLE, J., joins, concurring in part and dissenting in part. I agree with the majority's conclusion that "the state failed to prove

that the defendant [Demetrice L. Lewis] had engaged in any activity, suspicious or otherwise, that would give rise to a reasonable inference that he planned to sell drugs at or within 1500 feet of [the proscribed area]." Therefore, I agree with part I of the opinion in which the majority affirms "the Appellate [Court's] . . . conclu[sion] that the defendant's conviction of sale of narcotics with intent to sell within 1500 feet of a school in violation of [General Statutes] § 21a-278a (b) was not supported by sufficient evidence and must be reversed." I disagree, however, with part II of the opinion, in which the majority concludes "that the state presented sufficient evidence to establish that the Timothy Dwight School was a public elementary or secondary school within the meaning of [General Statutes] § 21a-267 (c)." Therefore, I respectfully dissent with respect to part II of the majority opinion and concur in part I of the opinion.

I agree with the majority that "[§] 21a-267 (c) provides in relevant part: 'Any person who violates subsection (a) or (b) of this section in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school and who is not enrolled as a student in such school shall be imprisoned for a term of one year . . . .' Thus, the classification of the school in question as an elementary or secondary school is an element of the offense that the state must establish beyond a reasonable doubt." In my view, however, the evidence was insufficient to prove a violation pursuant to this section. It is for this reason that I disagree with part II of the majority opinion.

Clifford Daniels, the district supervisor for the board of education of the city of New Haven, testified that the Timothy Dwight School is a school in his district. He also testified that it was a public school. He did not testify, however, that the school was either an elemen-

tary or a secondary school, as is required by §§ 21a-267 (c) and 21a-278a (b). Further, he failed to testify that the school was not a public preschool. A preschool does not come within the definition of an elementary or secondary school under the statutes. It is important to present a portion of Daniels' testimony in order to set the context of the majority's reliance on his testimony. The following exchange occurred between Daniels, the defendant, counsel and the court:

"[The Prosecutor]: On June 3, 2005, was the Timothy Dwight School a New Haven public school?

"[Daniels]: Yes.

"[The Prosecutor]: What are the grades or the ages of the children who attend the Timothy Dwight School?

"[Defense Counsel]: Objection, relevance. The ages of the children who attend the school, there's no relevance to that, Your Honor, the charges that this incident occurred within 1500 feet of the property of a school and they've had a witness from the city engineer's—

"The Court: How is it relevant, counsel?

"[The Prosecutor]: I'd like to be heard outside the presence of the jury, please.

"The Court: I don't think that's necessary. Sustained.

"[The Prosecutor]: Well, then I would like to respond.

"The Court: Sustained. Ask the next question.

"[The Prosecutor]: What grades?

"[Daniels]: The grades are from—

"[Defense Counsel]: Objection, again, relevance. It's a public—

"[The Prosecutor]: It's a necessary element, Your Honor, [of] § 21a-267 (c).

"The Court: The jury can be removed, please. The necessary element to § 21a-267 (c) is what?

"[The Prosecutor]: 'The real property comprising of public or private, elementary, secondary school and who is not enrolled as a student in such school.' The grades are not only relevant, but necessary for the state to be able to prove its count four.

"The Court: Well, how are they going to know how old? You mean that the defendant is not a student there.

"[The Prosecutor]: Yes.

"[Defense Counsel]: Your Honor, this took place on June 3, 2005. I think there's a foundational question as to whether the school was either in session and if—

"The Court: It doesn't matter if it's in session.

"[Defense Counsel]: If the state wants to ask what's the highest grade level of a student there and that they— that's a necessary element and I can see it being relevant, but not the ages of all who attend the school.

"[The Prosecutor]: And the last question that I asked, I did not ask the age. I asked the grade levels.

"[Defense Counsel]: The grade levels. But what's the highest grade? If the highest grade is fifth grade, it doesn't you know, they can see that [the defendant] probably isn't in the fifth [grade] enrolled at that school. I'm just worried about—I understand the state's burden of proof and I'm not going to try to prevent the state nor can I prevent the state from trying to prove its case. However, it is . . . prejudicial to my client if it comes in that we've got eight year old kids attending this school and I think it's unfair and its prejudice to his right to a fair trial. So, if they need to ask it, I don't see any objection to asking what the highest grade level is at that school. But to ask the age of all the children who attend that school, I think that's prejudicial.

"[The Prosecutor]: And I've withdrawn that part of my question, Your Honor, I'm asking for the grade levels.

"[Defense Counsel]: All the grade levels. Why not the highest grade? The same result because it's the highest grade level.

"The Court: So then, you know, how are you going to make the proof that he's not a student there? Simply by saying that it goes up to the eighth grade and that's the oldest child that might be there? Is that what you—

"[The Prosecutor]: That's the inference that the jury can draw, Your Honor.

"The Court: Okay, I'm not saying that they can't. I'm just—

"[The Prosecutor]: I might as well address it right now, while the jury is not here. Assuming that Your Honor allows the witness to answer that question, what the grade levels are at the Timothy Dwight School, my next question will be whether this witness knows if the defendant is a student enrolled or was a student enrolled at that school on June 3, 2005.

"The Court: Well, does he know that?

"[The Prosecutor]: He does not. But I'm willing to ask that question anyway. He can answer truthfully, the way that he can answer the question.

"The Court: Is that an issue here?

"[Defense Counsel]: Your Honor—

"The Court: I mean are you willing to stipulate that he's not a student at Timothy Dwight School?

"[The Prosecutor]: I would accept the stipulation.

"[Defense Counsel]: Let me talk to [the prosecutor].

"The Court: The issue is not whether the school was open or closed. That makes no difference. The issue is: Are you a student at Timothy Dwight [School] or not? Are you willing to say, you know, the question is— you're not required to stipulate that he's a student at Timothy Dwight [School]. The state can go about proving that element however they think is necessary to prove that element. But I think that the prosecutor does bring up a point, if he's going to go about proving it that way, then I think the necessary bit of information he needs to glean is: What's the highest grade level? You can't say the oldest student because you don't know. But I will allow the question as to what the highest grade level is.

"[The Prosecutor]: Just the highest grade level or can I ask the grade ranges?

"The Court: No, what's the point in the ranges. It's the highest grade level, you know.

"[Defense Counsel]: Your Honor, I prefer to stipulate. I understand the state's got its burden, but . . . it's still prejudicial to hear there are, you know, its fifth grade to sixth grade—

"The Court: I'm not letting that in. I'm letting in the highest grade level.

"[Defense Counsel]: Right. I understand that. But if we stipulate that [the defendant] was not a student at the school at the time, June 3rd—

"The Court: Then none of this is necessary.

"[Defense Counsel]: I'm willing to stipulate to that.

"The Defendant: I don't have a choice?

"[Defense Counsel]: No, you do have a choice.

"The Court: You have a choice, but, you know.

"The Defendant: My attorney said he could do it for me and I'm doing it. I'll stipulate.

"The Court: Well—

"The Defendant: I'll stipulate.

"[Defense Counsel]: You don't need to do anything. We'll stipulate. Do you understand . . . ?

"The Defendant: I'll stipulate.

"The Court: Well, let's draw up the stipulation now.

"[Defense Counsel]: Okay.

"The Court: Okay . . . [the] prosecutor and the defendant's counsel agree that . . . the defense stipulate[s] to the fact that the defendant was not a student at Timothy Dwight School on June 3, 2005.

"[Defense Counsel]: Fine. Acceptable to the defendant.

"[The Prosecutor]: Acceptable.

"The Court: Okay. So, let's write out the stipulation and let's enter it as an exhibit.

"[The Prosecutor]: Do you want defense counsel or do you want the defendant?

"The Court: [The] [d]efendant through his counsel and the state agree and stipulate that [the defendant] was not a student at Timothy Dwight School on June 3, 2005. Can you read it, please?

"[The Prosecutor]: February 7, 2005, the defendant through his counsel—

"The Court: Agree and stipulate that—

"[Defense Counsel]: Was not a student enrolled at the Timothy Dwight School.

"The Court: On June 3, 2005.

"[The Prosecutor]: Was not a student enrolled at the Timothy Dwight School. 'The defendant through his counsel agree and stipulate that the defendant . . . was not a student enrolled at the Timothy Dwight School on June 3, 2005.' I'm going to add, '[t]hat the state of Connecticut joins in this stipulation.'

"The Court: Let's see did you write one too, [defense counsel]?

"[Defense Counsel]: I did. 'The defendant through his counsel and the state agree and stipulate that [the defendant] was not a student enrolled at the Timothy Dwight School on June 3, 2005.'

"The Court: That would do it. So, sign—both sign on that.

"[Defense Counsel]: I just want to make sure you can read it. Can you read that?

"The Court: That is the stipulation. That is what you're agreeing to. That's what will be entered as a stipulation, however, subject to being—we'll keep that exhibit. Retype it word for word and you know we'll make it a more proper exhibit tomorrow. May I see it please?

"[Defense Counsel]: May I approach, Your Honor. I think the language is fine. I agree with the court.

"The Court: All right, I'm holding in my hand, it's a yellow piece of paper signed stipulation and it has, 'The defendant,' and then it has an arrow pointing 'through his counsel and the state agree and stipulate that [the defendant] was not a student enrolled at the Timothy Dwight School . . . on June 3, 2005.' Is that your stipulation, Mr. Prosecutor?

"[The Prosecutor]: It is, Your Honor.

"The Court: Is that yours, Mr. Defense Attorney?

"[Defense Counsel]: Yes, it is Your Honor.

"The Court: All right. This will be marked as court's exhibit. Is this our first?

"The Clerk: Yep.

"The Court: Court's exhibit 1. And it will be subject to retyping it, and re-signing so that it's not written in someone's hand and the jury can read it, although they'll be apprised of it.

"[The Prosecutor]: No objection, Your Honor.

"[Defense Counsel]: No objection, Your Honor.

"[The Prosecutor]: Before you bring the jury out, I can't remember and I don't want to re-ask the question if I've already asked it. Did I ask whether the Timothy Dwight School is a public school? I can't remember that I did that or not.

"The Court: I believe that you did, but you can ask it again.

"[The Prosecutor]: Thank you.

"The Court: That's all right, you can ask it again.

"[The Prosecutor]: Thank you.

"The Court: That's all right. You can ask it again. Because you don't have anything else to ask him; is that right?

"[The Prosecutor]: No, I don't know if Your Honor is willing to inform the jury that we've entered into a stipulation.

"The Court: I don't need to now. They don't need to know that. You know if at the end of the trial, I instruct, you know, we can deal with it. Okay. Bring the jury back in.

"(Whereupon, jury panel enters the courtroom.)

"The Court: Counsel stipulate to the presence of all the jurors.

"[The Prosecutor]: Yes, Your Honor.

"[Defense Counsel]: Yes, Your Honor.

"The Court: Any further questions?

"[The Prosecutor]: One more question.

"[The Prosecutor]: Is the Timothy Dwight School a public school in the city of New Haven?

"[Daniels]: Yes.

"[The Prosecutor]: Thank you."

The majority indicates that "the jury could properly draw reasonable inferences from Daniels' statement 'The grades are from . . . .' " I disagree. In my view, the record is clear that the court, in the absence of the jury, indicated to counsel that it would allow the state to inquire as to the highest grade level at the school, but would not permit a question about the range of grades or the ages of the children. The fact that the partial response was not stricken from the record and the jury was not instructed to disregard the partial answer does not change the fact that the court would not allow the answer to this question. The initial question posed by the prosecutor, in the presence of the jury was: "What are the grades or the ages of the children who attend the Timothy Dwight School?" Defense counsel objected and the court entered the following ruling:

"[The Prosecutor]: I'd like to be heard outside the presence of the jury, please.

"The Court: I don't think that's necessary. Sustained.

"[The Prosecutor]: Well, then I would like to respond.

"The Court: Sustained. Ask the next question.

"[The Prosecutor]: What grades?

"[Daniels]: The grades are from—

"[Defense Counsel]: Objection, again, relevance. . . .

\* \* \*

"The Court: . . . But I will allow the question as to what the highest grade level is.

"[The Prosecutor]: Just the highest grade level or can I ask the grade ranges?

"The Court: No, what's the point in the ranges. It's the highest grade level, you know.

"[Defense Counsel]: Your Honor, I prefer to stipulate. I understand the state's got its burden, but . . . it's still prejudicial to hear there are, you know, it's fifth grade to sixth grade—

"The Court: I'm not letting that in. I'm letting in the highest grade level."

Clearly, this is part of the same question to which the objection was previously sustained. Even though the state is well aware of the court's ruling on the record, it still argues that the answer should stand on appeal. The majority accepts this proposition and uses it as a basis for reversing the judgment of the Appellate Court. It seems more than a bit incongruous to me that, once a court's ruling sustaining an objection is made on the record, we should now use part of the answer that was incomplete before the jury, as a basis for our opinion. Although the court did not sustain the objection to the question in front of the jury, it is likely that the jurors realized that the objection was sustained, since the question was similar to the prior question to which an objection was sustained, and the prosecutor asked a new question when the jury returned. See *State* v. *Lyons*, 43 Conn. App. 704, 713, 686 A.2d 128 (1996)

(noting court implicitly sustained certain objections), cert. denied, 240 Conn. 906, 688 A.2d 335 (1997). Thus, in a case wherein the plaintiff gave a partial answer to a question before defense counsel could object, the Supreme Court did not require counsel to move to strike the answer after the objection was sustained. "The only basis upon which the plaintiff can claim error in the ruling of the trial court in setting aside the verdict is that the jury could, in the absence of a motion to strike out, properly consider the testimony. That is not the law in this jurisdiction." *Hackenson* v. *Waterbury*, 124 Conn. 679, 684, 2 A.2d 215 (1938). In the present case, the fact that the court's ruling did not entirely occur in the presence of the jury, under the circumstances of this case, should not make a difference. We should follow the precedent established in *Hackenson*.

In my view, this partial testimony is not only inadequate, but also suggests an approach to appellate review to which we should not subscribe. Further, the court charged the jury as follows: "You are to consider only such evidence as was admitted. And if some evidence was given but stricken from the record or if some evidence was offered and refused, you must not consider it and you must dismiss it from your minds." I would place the partial answer "[t]he grades are from," in light of the court's explicit rulings, in the category of evidence offered and refused. It should not, pursuant to the court's instructions, have been considered by the jury, and we should not consider it on appeal.

There is yet another basis to reject this partial answer as providing sufficient evidence of the nature of the school. We are left to speculate what the entire answer may have been. Was it: the grades are from ten to twelve? Was it: the grades are from one to six? Certainly, either of these answers would have satisfied the state's burden of proof. To the contrary, however, if the answer was, "the grades are from preschool age three to pre-

school age five," such an answer would not have satisfied the state's burden of proof. We are left to speculate regarding the full answer that Daniels would have supplied.

General Statutes § 10-4 (a) provides that the state board of education has general supervision and control over "preschool, elementary and secondary education, special education, vocational education and adult education . . . ." In other statutes, as explained by the Appellate Court, "the legislature includes kindergarten when discussing elementary education but does not include preschool. See General Statutes § 10-145d (f) (under state board regulations for teacher certification, endorsement to teach elementary education valid for kindergarten through grade six, inclusive); General Statutes § 10-273a (town transporting children to elementary school including kindergarten may seek reimbursement for transportation cost). Because public schools exist that are neither elementary schools nor secondary schools, Daniels' testimony that the Timothy Dwight School was a public school was not sufficient to support a finding that the conduct occurred within 1500 feet of an elementary or secondary school." *State v. Lewis*, 113 Conn. App. 731, 743–44, 967 A.2d 618 (2009). I agree with the Appellate Court.

The state does not dispute the Appellate Court's opinion that there are other public schools that do not come within the definition of elementary or secondary schools, such as preschools. Instead, the state argues, and the majority accepts, that the evidence in this case was sufficient because the jury could infer from Daniels' partial answer "[t]he grades are from," that he had to be referring to a school with grades, which would not include preschools or schools devoted solely to adult education. As indicated previously, in my view, we should not be considering this phrase in light of the trial court's express ruling that it would not allow it.

Even if we should consider it, however, I agree with the defendant's contention that "neither [General Statutes] § 10-220 (a) nor the partial answer supplied any evidence as to what type of school Timothy Dwight School was and the state's claim to the contrary is utterly without merit." Section 10-220 (a) requires local boards of education to maintain elementary and secondary schools. Daniels, however, never testified that the only schools that fell within his supervision were elementary and secondary schools. A juror would not be expected to have knowledge of this particular statute. See *United States* v. *Hall*, 152 F.3d 381, 410 (5th Cir. 1998) (juror is not expected to know law). Further, as indicated by the Appellate Court, there are public preschools in Connecticut that do not come within the definition of an elementary school. In many educational statutes, the legislature refers to preschool education separately from elementary and secondary education. See General Statutes § 10-4 (a) (state board of education supervises educational interests of state, including "preschool, elementary and secondary education"). Thus, in my view, §§ 21a-278a (b) and 21a-267 (c) are violated only if the prohibited acts occur within 1500 feet of an elementary or secondary school, and not a preschool. The clear language of § 21a-267 (c) refers to "real property comprising a public or private elementary or secondary school . . . ."

The jury was left with an incomplete answer prior to the recess. When court reconvened, the prosecutor asked a different question. The jury was later instructed in the court's final charge that "if some evidence was offered and refused, you must not consider it and you must dismiss it from your minds." The jury is presumed to follow the court's instructions; *State* v. *Bausman*, 162 Conn. 308, 314, 294 A.2d 312 (1972); but since the court precluded the jury from considering the unfinished answer, and because it is not properly considered

as "evidence" (because it was offered and refused), it cannot be the basis for concluding that the state met its burden of proof. Further, because Daniels did not finish his answer and did not affirmatively state that there were actually grades at the school, it is unknown what his complete answer would have been, or if he would have verified that the school had grades. In my view, the majority's conclusion that the jury could infer that the school was an elementary or secondary school on the basis of Daniels' incomplete answers crosses the boundary between reasonable inferences and sheer speculation. The prosecutor never asked the question that would have established the state's burden of proof. If the prosecutor had asked the question that the court would have allowed regarding the highest grade in the school, in my view, it might have been sufficient for the jury to have found whether the school was an elementary or secondary school. The incomplete answer "[t]he grades are from" should not form the basis for reversing the Appellate Court's decision.

The majority indicates that, "[e]ven assuming that the trial court partially sustained the defendant's objection, however, the parties' discussion with the trial court occurred while the jury was excused." I respectfully disagree. The first question, in the presence of the jury, incorporated the inquiry regarding the grades at the school. The court twice sustained the objection to this question and instructed the prosecutor to move on. The next question was "[w]hat grades?" Daniels then started his answer and defense counsel objected. This sequence of events occurred in the presence of the jury. In the absence of the jury, the court indicated that it would not allow the question when it stated: "No, what's the point in the ranges. It's the highest grade level, you know. . . . I'm not letting that in." When the jury returned, a different question was asked. Therefore, in

my view, part of the court's ruling did occur in the presence of the jury.

Accordingly, in my view, we should not consider a partial answer, made in response to a question to which the court had sustained an objection, as a basis for our decision. There was insufficient evidence in the record of the defendant's intent to sell narcotics at the location of his arrest, as is required under § 21a-278a (b). Further, there was insufficient evidence that the Timothy Dwight School was an elementary or secondary school, as required by § 21a-267 (c). Therefore, I concur with the majority as to part I of its opinion affirming the judgment of the Appellate Court that the state failed to carry its burden to support a conviction under § 21a-278a (b). I respectfully dissent from part II of the majority opinion, however, because I would also affirm the judgment of the Appellate Court that there was insufficient evidence presented that the Timothy Dwight School was an elementary or secondary school, as is required to support a conviction under § 21a-267 (c).