STATE OF CONNECTICUT v. ROBERT GRANT
(14000)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and SANTANIELLO, Js.

Argued May 30—decision released July 23, 1991

*Brigid Donohue,* certified legal intern, with whom were *Timothy H. Everett, Todd D. Fernow* and, on the brief, *Michael R. Sheldon,* for the appellant (defendant).

*Rita M. Shair,* deputy assistant state's attorney, with whom were *John M. Bailey,* state's attorney, and, on the brief, *Warren Maxwell,* senior assistant state's attorney, for the appellee (state).

SANTANIELLO, J. The defendant appeals from the judgment of conviction, after a jury trial, of the crime of accessory to murder, in violation of General Statutes §§ 53a-54a and 53a-8.[1] In his appeal, the defendant claims that the trial court should have ordered a judgment of acquittal because the evidence was insufficient to prove beyond a reasonable doubt that he possessed the mental state required for the commission of the crime.

The jury could reasonably have found the following facts. On the evening of March 19, 1988, the victim, Marcel Malcolm, was found "slumped over" the seat of his white Nissan automobile at the intersection of Harold and Lyme Streets in Hartford. He was transported to the hospital where he was pronounced dead. The cause of death was certified as shotgun wounds to the head and neck. The manner of death was ruled a homicide.

Two witnesses for the state, Robert Gordon and Marc Osborne, testified about the events that occurred immediately prior and subsequent to the shooting. Gordon testified that the victim was involved in the selling of cocaine and that an association existed between the vic-

---

[1] General Statutes § 53a-54a provides: "MURDER. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

General Statutes § 53a-8 provides: "CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

tim and Ronald Daniels, whereby Daniels would sell drugs for the victim. Disagreements had arisen over $400 that Daniels owed to the victim. Between 5 and 6 p.m. on March 19, 1988, Daniels called Gordon, who, at the time, was living in Daniels' house with Daniels' family, and asked him to take the victim to a certain location at Lyme Street. When the victim appeared at Daniels' house, he and Gordon drove to Lyme Street in the victim's white Nissan automobile.

Osborne testified that at approximately 5:45 p.m. on March 19, 1988, he received a telephone call at his home from Daniels, requesting the use of Osborne's shotgun. When Osborne asked Daniels why he wanted the shotgun, Daniels responded that he "wanted to scare someone." Between approximately 6:45 and 7 p.m., Daniels arrived at Osborne's house and took the shotgun and three shells. Daniels put the shotgun down his sweatpants and zipped up his jacket and then he and Osborne left the house and proceeded on foot west on Tower Avenue toward its intersection with Palm Street. Before they reached Palm Street, a man, later identified as the defendant, drove up in a dark colored Mazda automobile and Daniels "flagged it down." Osborne got in the back seat and Daniels got in the passenger seat. Once in the car, there was some whispered conversation between the defendant and Daniels, but nothing that Osborne could hear.

Without any instructions from Daniels, the defendant proceeded west down Tower Avenue, took a right onto Palm Street going north and another left onto Harold Street. About halfway between Palm and Lyme Streets, Daniels told the defendant to pull over, and Daniels and Osborne got out of the defendant's automobile. The defendant then proceeded west down Harold Street and made a right onto Lyme Street. Daniels and Osborne continued to walk down Harold

Street until they reached the intersection of Lyme Street, where they waited until the white Nissan driven by the victim pulled up and parked.

After the victim arrived and parked his car, Gordon, who was in the passenger seat, got out and walked over to Daniels, who had proceeded to the driver's side of the vehicle. An argument developed between the victim and Daniels, after which Daniels pulled the shotgun out of his sweatpants, told the victim he had five seconds and proceeded to count backwards from five. After the countdown, Daniels fired three shots into the victim.

Within seconds of the shooting, the defendant's dark colored Mazda automobile reappeared and pulled up next to the victim's car. After the defendant gave certain instructions to Daniels, all three men, Daniels, Gordon and Osborne, got into the defendant's automobile and drove away from the scene.

At the close of the evidence, the jury found the defendant guilty of accessory to murder and not guilty of conspiracy to commit murder. He was sentenced to twenty-five years in prison.

The defendant's sole claim on appeal is that the trial court should have ordered a judgment of acquittal on the charge of accessory to murder. According to the defendant, the evidence presented at trial was insufficient to support the jury's finding that at the time he allegedly aided Daniels, he intended to cause Malcolm's death.

"The two-part test for appellate analysis of a claim of evidentiary insufficiency is well established. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could

have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. *State* v. *Allen,* 216 Conn. 367, 380, 579 A.2d 1066 (1990). It is immaterial to the probative force of the evidence that it consists, in whole or in part, of circumstantial rather than direct evidence. Id., 381. Furthermore, in determining whether the jury reasonably could have found guilt, we ask whether any rational factfinder could have done so. *State* v. *Chace,* 199 Conn. 102, 105, 505 A.2d 712 (1986)." *State* v. *Montanez,* 219 Conn. 16, 19–20, 592 A.2d 149 (1991). "We do not sit as a thirteenth juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984).

The defendant was implicated as an accessory to the murder by the testimony of Gordon, Osborne and Detective James C. Rovella. Gordon and Osborne both testified that after Daniels shot the victim, they were in shock and ran away from the crime scene. When they were a short distance away, they saw the dark colored Mazda automobile emerge from a side street at a normal rate of speed and pull up next to the victim's car.[2] Gordon and Osborne then went over to the Mazda and saw that the operator of the vehicle was the defendant, Robert Grant.

Both Gordon and Osborne testified that the behavior of the defendant while at the crime scene was calm.[3]

---

[2] Osborne testified that only ten seconds elapsed between the time the shooting stopped until the Mazda returned.

[3] Gordon testified that defendant was "very calm, like nothing had ever happened."

They heard the defendant tell Daniels to check the victim's body for drugs and money, which he did. They then heard the defendant tell Daniels to get the body and put it in the back of the Mazda, which Daniels did not do because "it was too bloody." Gordon and Osborne then got in the back of the Mazda and Daniels got in the passenger seat. Daniels had already put the shotgun in the car. The defendant then drove away in a rapid and erratic manner. While driving away, the defendant made a statement to Daniels that they should get some gasoline to burn the car. After a few blocks, Gordon and Osborne got out of the car and walked to their respective homes. Osborne took the shotgun from the defendant's car and eventually brought it to a friend's house.

Rovella testified regarding an interview he conducted with the defendant on March 22, 1988, after the defendant was under arrest. Rovella questioned the defendant about his activities on March 19, 1988, and the defendant told Rovella that a friend of his, Mr. Williams, called him and that they were going to go out together. The defendant told Rovella that at approximately 8:30 p.m., Williams picked him up and they went to Williams' house, and stayed for approximately one half hour, after which time they drove to Springfield, Massachusetts, where they spent the rest of the evening.[4]

Rovella further testified that when the defendant was telling this story, he was "very confident and fluid." After hearing this statement of events, however, Rovella confronted the defendant with the fact that Daniels was already under arrest, and that the other

---

[4] On cross-examination, Rovella admitted that this story was inconsistent with the report he made after the interview, in which he wrote that the defendant and his friend had *decided* to go to Springfield, but not that they actually had gone.

involved parties were giving written statements to other detectives. At that point, the defendant's attitude changed and he became "evasive," "argumentative" and "arrogant." Eventually, the defendant admitted that he had picked up Daniels, Osborne and Gordon and had driven them away from the crime scene.

The gravamen of the defendant's argument is that in order to sustain the jury's guilty verdict, the evidence adduced at trial taken in the light most favorable to the state must afford the jury a rational basis to reject each and every other reasonable conclusion also supported by that evidence which is consistent with the defendant's innocence of the crime charged. This argument is based on the defendant's interpretation of the reasonable doubt standard which provides that proof beyond a reasonable doubt is " 'proof which precludes every reasonable hypothesis except that which it tends to support, and is consistent with the defendant's guilt and inconsistent with any other rational conclusion. *State* v. *Smith,* 138 Conn. 196, 200, 82 A.2d 816 [1951]. . . .' *State* v. *Foord,* [142 Conn. 285, 295, 113 A.2d 591 (1955)]; *State* v. *Martin,* [195 Conn. 166, 173, 487 A.2d 177 (1985)]; *State* v. *Morrill,* [193 Conn. 602, 610–11, 478 A.2d 994 (1984)]." *State* v. *Carpenter,* 214 Conn. 77, 84, 570 A.2d 203 (1990).

The defendant claims that the evidence introduced at trial and the inferences drawn therefrom give rise to two rational conclusions consistent with the defendant's innocence, namely (1) that Daniels himself only formed his intent to kill the victim after he, Daniels, arrived at the crime scene, and therefore that the defendant could not have shared such an intent when he aided Daniels by giving him a ride, and (2) that even if Daniels had indeed formed an intent to kill the victim before the defendant had given him a ride, the

defendant was unaware of Daniels' plan and did not share his intent to kill. Thus, the defendant argues, the evidence presented at trial was constitutionally insufficient to support the jury's finding that at the time he aided Daniels he intended to cause the victim's death. We find this argument unpersuasive.

"Generally, intent can be proved only by circumstantial evidence." *State* v. *Morrill,* supra, 609. "Where there is sufficient evidence to support a reasonable inference that the defendant intended to commit the crime charged, whether such an inference should be drawn is properly a question for the jury to decide." Id. From the evidence presented, the jury was entitled to infer that when Daniels borrowed the shotgun and shells from Osborne, he believed that murder was one of the potential outcomes of his confrontation with the victim. Daniels set up the meeting with the victim, kept the shotgun hidden and had only a brief discussion with the victim before he began his "countdown." The logical inference is that Daniels did not first form the intent to kill the victim when he was standing next to the victim's car door.

Furthermore, the defendant's behavior in this case supports the inference that he intended to cause the victim's death as well. Specifically, the jury was entitled to infer the defendant's knowledge from the fact that he picked up Daniels and Osborne on the way to the crime scene, drove them part of the way to their destination without any instructions from Daniels, and had a brief, whispered conversation with Daniels in the front seat before dropping them off. The defendant returned within seconds of the murder, remained calm while the two witnesses were in shock, and gave orders to check the body for drugs and money and to put the body in the car. A rapid escape from the crime scene followed.

From all of this evidence, the jury could reasonably have found that the defendant was not surprised by the murder but rather had advance knowledge of the plan. Furthermore, the jury was entitled to infer consciousness of guilt from the defendant's conflicting statements given to Rovella and the defendant's change in attitude upon learning that the other involved parties were giving statements to police. "The jury was entitled to apply its own knowledge and experience of human nature to th[e] evidence"; *State* v. *Sinclair,* 197 Conn. 574, 578, 500 A.2d 539 (1985); and to conclude that when the defendant aided Daniels in murdering the victim, he shared Daniels' intent. "That the jury might have drawn other possible inferences from these facts is not sufficient to undermine its verdict, since proof of guilt must be established beyond a reasonable doubt, not beyond a possible doubt. *State* v. *Morrill,* [supra, 610–11]." Id.[5] "[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. *State* v. *Tatem,* 194 Conn. 594, 598, 483 A.2d 1087 (1984); *State* v. *Foord,* [supra, 294]." *State* v. *Dumlao,* 3 Conn. App. 607, 616–17, 491 A.2d 404 (1985).

Finally, "[w]here a group of facts are relied upon for proof of an element of the crime it is their cumulative

---

[5] The defendant argues in his reply brief that contrary inferences supporting his innocence may be drawn from the same evidence, namely: (1) that Daniels and Osborne were within walking distance of the crime scene when they set out on foot, and that Osborne believed they would have arrived promptly at their destination even if the defendant had not stopped; (2) that the defendant pulled over his car only after being "flagged down" by Daniels; and (3) that the Mazda driven by the defendant was a two-seater, with no back seat for passengers.

impact that is to be weighed in deciding whether the standard of proof beyond a reasonable doubt has been met and each individual fact need not be proved in accordance with that standard. It is only where a single fact is essential to proof of an element, however, such as identification by means of fingerprint evidence, that such evidence must support the inference of that fact beyond a reasonable doubt." *State* v. *McDonough,* 205 Conn. 352, 355, 533 A.2d 857 (1987), cert. denied, 485 U.S. 906, 108 S. Ct. 1079, 99 L. Ed. 2d 238 (1988); see also *State* v. *Castonguay,* 218 Conn. 486, 507, 590 A.2d 901 (1991). In the present case, the ultimate conclusion of the defendant's intent as an element of the crime of accessory to murder was proven beyond a reasonable doubt by the cumulative impact of the testimony and the rational inferences drawn therefrom. From all of the evidence the jury could reasonably have concluded that the defendant was guilty of accessory to murder.

The judgment is affirmed.

In this opinion the other justices concurred.