******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* ANDRE GILL
### (AC 39841)

DiPentima, C. J., and Alvord and Kahn, Js.*

*Syllabus*

Convicted, after a jury trial, of, inter alia, the crime of murder in connection with an incident in which the defendant shot the victim in the parking lot of a nightclub, the defendant appealed, claiming that there was insufficient evidence to prove the specific intent element necessary to support his murder conviction. *Held* that the state presented sufficient evidence from which the jury reasonably could have inferred that the defendant intended to cause the victim's death to support the defendant's conviction of murder: the evidence and testimony presented by the state demonstrated that the victim had grabbed the defendant by the throat during a fight inside the nightclub and that the dispute continued in the club's parking lot, where the defendant yelled at the victim, got out of his car with a revolver as the victim walked toward the car, and fired the revolver directly at the victim, striking him in his torso, just below the breastbone; moreover, there was ample evidence of the defendant's conduct after the shooting from which the jury could have inferred an intent to kill, as the defendant displayed a consciousness of guilt by cleaning the revolver and another gun involved in the incident with bleach to remove any fingerprints or DNA, asking his brother's friend to dispose of the guns, and making untruthful statements to the police.

Argued September 13—officially released November 7, 2017

*Procedural History*

Substitute information charging the defendant with the crimes of murder, conspiracy to commit murder, criminal possession of a firearm, carrying a revolver without a permit, tampering with a witness, false statement in the second degree and tampering with evidence, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *Dewey, J.*; thereafter, the charge of criminal possession of a firearm was tried to the court; verdict and judgment of guilty of murder, criminal possession of a firearm, carrying a revolver without a permit, false statement in the second degree and tampering with evidence; subsequently, the court denied the defendant's motion for a judgment of acquittal, and the defendant appealed. *Affirmed.*

*Lisa J. Steele*, assigned counsel, for the appellant (defendant).

*Jennifer F. Miller*, deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Anne Mahoney*, state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Andre Gill, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes §§ 53a-54a and 53a-8; carrying a revolver without a permit in violation of General Statutes § 29-35 (a); false statement in the second degree in violation of General Statutes (Rev. to 2011) § 53a-157b; and tampering with physical evidence in violation of General Statutes §§ 53a-155 and 53a-8.[1] On appeal, the defendant's sole claim is that there was insufficient evidence to prove the element of specific intent necessary to support the murder conviction. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, are relevant to the defendant's appeal. On the night of November 18, 2011, the defendant drove his Acura with his friend Charles Young to a nightclub in Hartford, Mi Bar, to perform rap music. At the time, the defendant lived at his grandmother's house with his children and others, including Young. A few days earlier, the house had been invaded, and the defendant's daughter and Young were tied up. After the home invasion, the defendant asked his brother's friend, Antoine Armour, to bring a gun to the house for protection. Armour provided the defendant with a .38 caliber Taurus revolver and a .380 caliber semiautomatic handgun. Armour also gave the defendant ammunition.

Initially, the defendant did not bring the guns to Mi Bar on November 18, 2011. After seeing people in the nightclub whom he knew to be associated with the home invasion, however, he returned to his grandmother's house with Young to retrieve the two guns. They then returned to Mi Bar, left the guns in the defendant's car, and reentered the nightclub.

During a performance by Arkeit Iverson, the sound system in the nightclub malfunctioned, at which point a fight broke out. The performer at the time, Iverson, was a cousin of the victim, Fred Pines. Iverson began pushing through the crowd, which included the defendant and the defendant's cousin, to reach the disc jockey. The defendant tried to stop Iverson from reaching the disc jockey, at which time the victim grabbed the defendant by the throat. The fight was captured on video, which was played for the jury during the evidentiary portion of the trial.

After the fight, people began running out of the nightclub into the parking lot, where the argument continued. The defendant testified that he was "having some words" with the victim in the parking lot. According to Young, the defendant went back to his car and got into the driver's seat, and Young got into the passenger's seat. The defendant began to drive out of the parking lot, but stopped to roll down his window and yell at

the victim. The victim walked toward the car, at which time the defendant got out of the car. Young also got out of the car with the .380 caliber semiutomatic handgun and fired two shots into the air. The defendant then fired one shot from the .38 caliber revolver at the victim. Young heard the victim say: "You missed. You ain't hit nothing." The defendant and Young ran to the back of the nightclub, got into cars located there, and left separately.

The defendant and Young met back at the defendant's grandmother's house, and the defendant called his brother, Morgan Gill, and Armour to ask them to get rid of the guns. The defendant, Morgan Gill, and Armour first cleaned the guns with bleach to remove any fingerprints or DNA. Armour then left with the guns and dumped them in the Connecticut River. The next morning the defendant and Young learned that the victim had died. Harold Wayne Carver, the chief medical examiner at the time of the shooting who had conducted the autopsy of the victim, concluded that the victim died as a result of a single gunshot wound to his trunk.[2] The bullet entered the victim's trunk close to the bottom of the breastbone, caused damage to the right lung, and passed through the diaphragm.

On November 19, 2011, the day after the shooting, the defendant went to the police station and voluntarily gave a written statement, in which he stated that he saw Young with a gun and that Young "pulled up and fired." He also falsely told the police during that interview that he went to Mi Bar alone on the night of November 18, 2011, because, he explained later, he "did not want to be associated with somebody who made a stupid decision." The defendant thereafter was arrested, charged with murder, among other crimes, tried before the jury, and convicted.[3] The court sentenced the defendant to a total effective term of fifty years of incarceration. This appeal followed.

The defendant claims that there was insufficient evidence presented at trial to convict him of murder. Specifically, he argues that the state failed to present sufficient evidence that he had intended to cause the victim's death, and, therefore, his conviction of murder cannot stand. We are not persuaded.

We first set forth our standard of review and the legal principles relevant to a claim of evidentiary insufficiency. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Franklin*, 175 Conn. App. 22, 30, 166 A.3d 24 (2017).

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Citation omitted; internal quotation marks omitted.) *State* v. *White*, 127 Conn. App. 846, 850, 17 A.3d 72, cert. denied, 302 Conn. 911, 27 A.3d 371 (2011). "On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Crespo*, 317 Conn. 1, 17, 115 A.3d 447 (2015).

Section 53a-54a (a) provides in relevant part that "[a] person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ." "[T]he specific intent to kill is an essential element of the crime of murder. To act intentionally, the defendant must have had the conscious objective to cause the death of the victim. . . . Because direct evidence of the accused's state of mind is rarely available . . . intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . Intent to cause death may be inferred from the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the death. . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Internal quotation marks omitted.) *State* v. *Otto*, 305 Conn. 51, 66–67, 43 A.3d 629 (2012).

The defendant's contention on appeal is that, on the basis of the evidence presented, the jury could have

concluded that he had committed manslaughter, not murder.[4] The defendant seeks to distinguish the facts of this case from the facts in cases in which our courts have found sufficient evidence of intent to kill the victim. He emphasizes the fact that he fired only a single shot and that the victim did not know that he had been injured. He claims that if he really had intended to kill the victim, he "could have fired another shot" after the victim seemed unhurt by the first shot. He further argues that the fight in the nightclub prior to the shooting was not "serious" enough to permit the jury to infer an intent to kill the victim. Lastly, the defendant claims that his conduct after the shooting, including but not limited to cleaning the guns and asking Armour to get rid of the guns, reflected "a consciousness of guilt of assault and, later, of manslaughter, not murder."

As noted previously, "a factfinder may infer an intent to kill from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the death . . . ." (Internal quotation marks omitted.) *State* v. *Robinson*, 125 Conn. App. 484, 488, 8 A.3d 1120 (2010), cert. denied, 300 Conn. 911, 12 A.3d 1006 (2011). There was testimony, which the jury could have credited, to support the defendant's intent to kill the victim, including that the defendant fired a revolver *directly at the victim*, and the autopsy revealed that the bullet struck the victim in his torso, just below the bottom of the breastbone. See *State* v. *Moye*, 119 Conn. App. 143, 149, 986 A.2d 1134, cert. denied, 297 Conn. 907, 995 A.2d 638 (2010) ("a person who uses a deadly weapon upon a vital part of another will be deemed to have intended the probable result of that act, and from such a circumstance a proper inference may be drawn in some cases that there was an intent to kill" [internal quotation marks omitted]).

The state also presented evidence regarding the events leading to the shooting from which the jury reasonably could have inferred the defendant's intent to cause the victim's death. There was evidence of a fight inside the nightclub, during which the victim grabbed the defendant by the throat. Moreover, there was evidence that the argument continued in the parking lot. The defendant testified that he and the victim were "having some words." Young testified that the defendant had stopped his car on the way out of the parking lot to yell at the victim and that the defendant got out of the car with the revolver as the victim walked toward the car. Although the defendant seeks to characterize the dispute as a "scuffle" and argues that prior cases "have involved much more serious disputes," our Supreme Court has stated that "[t]he jury is not required to close its eyes to the unfortunate reality that murders frequently are committed in response to seemingly minor provocations." *State* v. *Gary*, 273 Conn. 393, 408, 869 A.2d 1236 (2005).

There also was ample evidence of the defendant's conduct after the shooting from which the jury reasonably could have drawn an inference of his intent to kill the victim. The defendant himself testified that he called Armour after the shooting to get rid of the gun.[5] Armour and Young both testified that the defendant cleaned the guns with bleach or household cleaners after the shooting. Detective Joseph Fargnoli of the Hartford Police Department testified that the defendant told him that he had cleaned the guns to remove any fingerprints or DNA. Moreover, the defendant acknowledged making untruthful statements to the police after the murder. Our Supreme Court has concluded that "consciousness of guilt evidence [is] part of the evidence from which a jury may draw an inference of an intent to kill." (Internal quotation marks omitted.) *State* v. *Otto*, supra, 305 Conn. 73; see also *State* v. *Moye*, supra, 119 Conn. App. 150 ("[a] trial court may admit [e]vidence that an accused has taken some kind of evasive action to avoid detection for a crime, such as flight, concealment of evidence, or a false statement, [which] is ordinarily the basis for a charge on the inference of consciousness of guilt" [internal quotation marks omitted]).

To the extent that the defendant requests this court to draw inferences contrary to those necessarily drawn by the jury, we note that "[i]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Grant*, 219 Conn. 596, 604, 594 A.2d 459 (1991). "That the jury might have drawn other possible inferences from these facts is not sufficient to undermine its verdict, since proof of guilt must be established beyond a reasonable doubt, not beyond a possible doubt." (Internal quotation marks omitted.) Id.

Mindful of our standard of review, which requires us to view the evidence in the light most favorable to sustaining the jury's verdict, we reject the defendant's claim and conclude that there was sufficient evidence presented at trial to support the defendant's conviction of murder.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The defendant also was convicted of criminal possession of a firearm, in violation of General Statutes § 53a-217 (a) (1), which charge was tried to the court. The jury acquitted the defendant of the charges of conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a; and tampering with a witness in violation of General Statutes § 53a-151.

[2] Carver removed the bullet from the victim's body and provided it to the police. James Stephenson, a state firearms and tool mark examiner, testified

that the bullet had been fired from either a .38 caliber revolver or a .357 caliber revolver and that it could not have been fired from a .380 caliber semiautomatic weapon. Two shell casings were also recovered from the crime scene. Stephenson testified that the shell casings were consistent with having been fired from a ".380 auto caliber firearm."

[3] As noted previously in this opinion, the defendant also was convicted of carrying a revolver without a permit, false statement in the second degree, tampering with physical evidence, and criminal possession of a firearm.

[4] The jury was instructed on lesser included offenses within the crime of murder, including manslaughter, and the defendant makes no claims of instructional error.

[5] Although the defendant testified that Armour had given him only one gun, the .380 caliber semiautomatic handgun, Armour and Young both testified that there were two guns, the .380 caliber semiautomatic handgun and a .38 caliber revolver.

---