******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOSE E. RAMOS
(AC 40390)

DiPentima, C. J., and Lavine and Pellegrino, Js.

*Syllabus*

Convicted, following a jury trial, of the crime of murder arising out of the shooting death of the victim, the defendant appealed. He claimed, inter alia, that the evidence against him was insufficient to support his conviction because a reasonable jury could not have found the witnesses who testified against him to be credible. *Held*:

1. The evidence was sufficient to support the defendant's conviction of murder; it was not for this court to retry the case or to evaluate the credibility of the witnesses on appeal, and the state's evidence against the defendant was strong, as the defendant confessed that he shot the victim to his sister, his brother-in-law, his friend, and in a videotaped statement to police in which he provided details such as the nature of the dispute with the victim and the gun that he used, as well as in handwritten letters of apology to his family and members of the victim's family.

2. The defendant's unpreserved claim that the trial court improperly failed to suppress evidence of his post-*Miranda* silence in violation of his constitutional right against self-incrimination failed under the third prong of *State* v. *Golding* (213 Conn. 233), the defendant having failed to demonstrate that a constitutional violation existed that deprived him of a fair trial; the state's use of the defendant's failure to answer a question posed by a detective about whether he killed the victim did not violate the defendant's privilege against self-incrimination, as the defendant remained selectively silent when asked if he had committed the crime, but answered questions before and after that question about his life and relationship with M, a witness who had provided information to the police about the defendant's presence at the murder scene, and he did not assert his *Miranda* right to remain silent or attempt to stop the interview.

3. The defendant could not prevail on his claim that the trial court committed plain error by permitting the state to present uncharged misconduct and past conviction evidence; the defendant's claim did not involve an error so obvious that it affected the fairness of or public confidence in the judicial proceeding, especially in light of the strength of the state's evidence against the defendant.

4. This court found unavailing the defendant's claim that the prosecutor's use of excessive leading questions during the cross-examination of the defendant constituted numerous instances of prosecutorial impropriety that deprived the defendant of his right to due process; our Code of Evidence (§ 6-8 [b]) restates the general rule that although leading questions are not proper on direct examination of a witness, they are proper on cross-examination, and the record here disclosed that the challenged line of questioning was standard cross-examination during which the prosecutor asked the defendant to confine his responses to "yes" or "no" answers, which was not improper.

Argued September 15—officially released December 5, 2017

*Procedural History*

Substitute information charging the defendant with the crime of murder, brought to the Superior Court in the judicial district of New London, where the court, *A. Hadden, J.*, denied the defendant's motion to suppress certain statements; thereafter, the case was tried to the jury; verdict and judgment of guilty, from which the defendant appealed. *Affirmed.*

*Jeremiah Donovan*, for the appellant (defendant).

*Lawrence J. Tytla*, supervisory assistant state's attorney, with whom, on the brief, was *Michael L. Regan*, state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Jose E. Ramos, appeals from the judgment of conviction, rendered following a jury trial, of murder in violation of General Statutes § 53a-54a. On appeal, the defendant claims that (1) there was insufficient evidence to support his conviction, (2) the court erred in failing to suppress evidence of his post-*Miranda*[1] silence, (3) the court committed plain error by admitting prior misconduct evidence, and (4) he was deprived of his due process rights as a result of prosecutorial impropriety. We are not persuaded by the defendant's claims on appeal and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of October 10, 2008, the victim, Tynel Hardwick, and his fiancée, Lenore Robinson, were at Rumors Bar on Boswell Avenue in Norwich (Rumors). At that time, the defendant was also at Rumors with his friends Lattoya Small and Dishon Morgan. Small observed the defendant and the victim engaged in a verbal dispute. Thereafter, the defendant asked Small to drive him to the apartment of his sister, Shavanha Kincade (Shavanha), and her husband, James Kincade (James), a few miles away, and Morgan joined them. The defendant had left a rifle at the apartment in late summer, 2008, while he was staying with them. When the defendant arrived at the apartment, Shavanha and James were away for the evening and James' mother was caring for their young child. The defendant went into the apartment and retrieved the rifle. The defendant, Small, and Morgan returned to Boswell Avenue across from Rumors. The defendant got out of the car at a distance away from Rumors and positioned himself in a grassy area in sight of the bar. When the victim came out of the bar, the defendant shot and killed him with a single gunshot wound to the head. The defendant then returned to Small's car and Small, accompanied by Morgan, drove the defendant to Hartford.

During their investigation in October, 2008, the police discovered .22 caliber rounds, a burnt cigar, earplugs, and footprints in the grass across the street from Rumors, but they were unable to identify any suspects. The defendant was implicated as the shooter in 2012 as part of a cold case investigation led by Detective Corey Poore of the Norwich Police Department. On September 25, 2012, while the defendant was living in New York City, Norwich detectives located him in Brooklyn. The Brooklyn detectives arrested him as a fugitive from justice, and the Norwich detectives subsequently extradited him to Connecticut. He then was charged with murder in violation of § 53a-54a. Following the presentation of evidence, the jury returned a verdict of guilty. Thereafter, the court sentenced the defendant to a total effective sentence of sixty years

imprisonment. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims that the evidence is insufficient to support his murder conviction. He argues that the numerous inconsistencies in testimony, combined with the psychological problems and motivations of the witnesses, were so significant that no reasonable juror could have accepted their testimony as credible and returned a guilty verdict. We address the defendant's sufficiency of the evidence claim before we address any other claims because if a defendant prevails on such a claim, the proper remedy is to direct a judgment of acquittal. See *State* v. *Raynor*, 175 Conn. App. 409, 419 n.8, A.3d (2017); *State* v. *Holley*, 160 Conn. App. 578, 589 n.3, 127 A.3d 221, cert. granted on other grounds, 320 Conn. 906, 127 A.3d 1000 (2015).

The two part test this court applies in reviewing the sufficiency of the evidence supporting a criminal conviction is well established. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Lewis*, 303 Conn. 760, 767, 36 A.3d 670 (2012).

"In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence." *State* v. *Delgado*, 247 Conn. 616, 620, 725 A.2d 306 (1999). "[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Grant*, 219 Conn. 596, 604, 594 A.2d 459 (1991). As we have observed, "proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Aloi*, 280 Conn. 824, 842, 911 A.2d 1086 (2007).

The defendant claims that a reasonable jury could not find the witnesses credible; however, "[i]t is well established that a reviewing court is not in the position to make credibility determinations. . . . This court

does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction*, 117 Conn. App. 120, 125–26, 977 A.2d 772, cert. denied, 294 Conn. 904, 982 A.2d 647 (2009). Therefore, we decline to assess the credibility of the witnesses on appeal.

Furthermore, the state's evidence against the defendant, including his multiple confessions, was strong. The defendant confessed that he shot the victim to his sister Shavanha, his brother-in-law James, and his friend Small. He also confessed to shooting the victim to members of the Norwich Police Department, providing details such as the nature of the dispute in the bar and the .22 caliber rifle he used. The jury also heard testimony from the defendant's good friend Morgan, who testified that he was like a "blood brother" to the defendant. Morgan testified that he was present at the time of the murder and saw the defendant shoot the victim. The defendant also gave a videotaped confession to the Norwich Police and confessed in handwritten letters of apology to his family and members of the victim's family. Construing the evidence in the light most favorable to sustaining a verdict, a jury reasonably could have found the defendant guilty of murder beyond a reasonable doubt on the basis of this evidence. Accordingly, we conclude that the jury's verdict finding the defendant guilty of murder is supported by sufficient evidence.

## II

The defendant next claims that the court erred in failing to suppress evidence of his post-*Miranda* warning silence. He contends that his fifth and fourteenth amendment rights against self-incrimination were violated when the jury heard evidence that the defendant did not deny the murder when Poore accused him of killing the victim. As a corollary to the privilege against self-incrimination, the United States Supreme Court held in *Doyle* v. *Ohio*, 426 U.S. 610, 617–18, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), that a state may not use a defendant's post-*Miranda* silence to imply that he is guilty of the crime charged. The defendant argues that the state violated *Doyle* by using his post-*Miranda* silence to imply that he had killed the victim. We do not agree.

The following additional facts and procedural history are relevant to this claim. On September 25, 2012, Poore interviewed the defendant after his arrest in New York City. The defendant was then presented before a New York judge on the extradition warrant and released into the custody of the Norwich detectives on the same day. As the Norwich detectives drove him to Connecticut, the defendant confessed to shooting the victim. The

next day, the defendant confessed to the shooting in a videotaped interview at the Norwich Police Department.

Prior to trial, the defendant filed a motion to suppress all of his postarrest statements to members of the Norwich Police Department, including written, spoken, and video statements. The court denied his motion to suppress, but deferred ruling on the issue of the defendant's post-*Miranda* silence.[2] The defendant then filed a written motion to preclude evidence of his post-*Miranda* silence at trial.

At trial, the state presented evidence of the defendant's post-*Miranda* silence through Poore's testimony as evidence of his guilt.[3] The defendant did not object to Poore's testimony. Poore testified that he interviewed the defendant after he was arrested in New York City on September 25, 2012. Poore verbally advised the defendant of his *Miranda* rights, the defendant then read each sentence out loud, and subsequently initialed by each sentence to indicate that he understood those rights. After the defendant signed the waiver form, Poore told him that they were there to discuss the shooting of the victim outside Rumors in October, 2008. When Poore accused the defendant of the murder, the defendant did not respond to the accusation. Poore then changed the subject and the two conversed about other topics, such as the defendant's family, the Norwich area in which they lived, and the defendant's life in New York City.

The defendant claims that the state improperly used his post-*Miranda* silence to imply his guilt in violation of his constitutional rights and that this constitutional violation was harmful. The state contends, however, that the defendant did not invoke his right to remain silent, and thus that no *Doyle* violation occurred. Moreover, the state argues, even if such an impropriety occurred, it was harmless beyond a reasonable doubt.

"[T]here is a distinction between a defendant who remains silent after he is arrested and advised of his rights, and a defendant who, after being given *Miranda* warnings, chooses to forgo such rights." *State* v. *Holmes*, 176 Conn. App. 156, 190–91, 167 A.3d 987 (2017). In the absence of an objection at trial, the defendant argues that he is entitled to review of his *Doyle* claim on appeal pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to

demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 239–40. Although the defendant's claim is reviewable, we conclude that the claim fails on the third prong because the defendant has not demonstrated that a constitutional violation existed that deprived him of a fair trial.

It is undisputed that the state's use of the defendant's post-*Miranda* silence raises a constitutional question. "In *Doyle* . . . the United States Supreme Court held that the impeachment of a defendant through evidence of his silence following his arrest and receipt of *Miranda* warnings violates due process. The court based its holding [on] two considerations: First, it noted that silence in the wake of *Miranda* warnings is insolubly ambiguous and consequently of little probative value. Second and more important[ly], it observed that while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." (Internal quotation marks omitted.) *State* v. *Holmes*, supra, 176 Conn. App. 188–90.[4]

A *Doyle* violation does not occur, however, where the defendant has not invoked his right to remain silent or has remained selectively silent. See *State* v. *Silva*, 166 Conn. App. 255, 283–85, 141 A.3d 916, cert. denied, 323 Conn. 913, 149 A.3d 495 (2016). "Once an arrestee has waived his right to remain silent, the *Doyle* rationale is not operative because the arrestee has not remained silent and an explanatory statement assuredly is no longer insolubly ambiguous. By speaking, the defendant has chosen unambiguously not to assert his right to remain silent. He knows that anything he says can and will be used against him and it is manifestly illogical to theorize that he might be choosing not to assert the right to remain silent as to part of his exculpatory story, while invoking that right as to other parts of his story. While a defendant may invoke his right to remain silent at any time, even after he has initially waived his right to remain silent, it does not necessarily follow that he may remain selectively silent." (Internal quotation marks omitted.) *State* v. *Talton*, 197 Conn. 280, 295, 497 A.2d 35 (1985).

The facts of present case are similar to those in *State* v. *Silva*, supra, 166 Conn. App. 276. In *Silva*, after receiving the *Miranda* warnings, the defendant remained silent when asked if he had killed the victim, yet answered questions about his relationship with the victim and his whereabouts on the morning of the victim's murder. Id., 285. The defendant in *Silva* alleged that the state's use of his post-*Miranda* silence violated his

fifth and fourteenth amendment privilege against self-incrimination because he did not respond to the ultimate inculpatory question. Id., 286. This court rejected the defendant's claim, holding that there is no *Doyle* violation where "there was no indication that the defendant was invoking his right to remain silent upon being asked that [inculpatory] question. He continued to answer questions thereafter and did not stop the interview . . . ." Id.

In the present case, we conclude that Poore's testimony that the defendant failed to respond to his accusation that the defendant killed the victim was not a *Doyle* violation. The defendant did not refuse to answer other questions, and in fact, was forthcoming about his relationship with Morgan after the police told the defendant that Morgan had given them information that he was present at the murder scene with the defendant. The defendant's statements were made after Poore had told the defendant that the purpose of the interview was to discuss the victim's murder. The only detail that the defendant did not discuss was whether he was the one who shot the victim. Here, as in *Silva*, the defendant did not assert his *Miranda* right to remain silent, nor did he attempt to stop the interview. He also answered numerous questions about his family, the Norwich area, and his relationship with Morgan. By speaking and answering other questions, the defendant unambiguously chose to waive his right to remain silent while being questioned by police, and was selectively silent when accused of the murder. We thus conclude that the state's use of the defendant's post-*Miranda* silence during direct examination of Poore was not a constitutional violation of the defendant's fifth and fourteenth amendment privilege against self-incrimination that deprived him of a fair trial.

### III

The defendant also claims that the court committed plain error in permitting the state to present a "tsunami of uncharged misconduct and past conviction evidence." The defendant contends that the prosecutor's use of the term "convicted felon" and mention of the defendant's eight prior arrests during cross-examination were extremely prejudicial to him.[5] The defendant, however, concedes that he did not object while he was being cross-examined, and that his evidentiary claim is not preserved. As he has raised an unpreserved claim that is not of constitutional nature, the defendant argues that reversal is nonetheless appropriate under the plain error doctrine. We do not agree. The following additional facts are relevant to this claim.

Prior to trial, the defendant filed three motions in limine to preclude the admission of his past misconduct, requesting that the prosecutor provide notice if the state intended to offer any misconduct evidence. At the start of trial, the prosecutor stated: "As things stand, I don't

think there is any stand-alone other misconduct evidence that we . . . intend to introduce." The defendant elected to testify on his own behalf. During the prosecutor's cross-examination of him, the prosecutor asked about his past misconduct. The defendant did not object to the state's cross-examination.

The plain error doctrine in Connecticut, which is "codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts only to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. . . . [T]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly." (Internal quotation marks omitted.) *State* v. *Patterson*, 170 Conn. App. 768, 784 n.17, 156 A.3d 66, cert. denied, 325 Conn. 910, 158 A.3d 320 (2017).

Our review of the transcript of the prosecutor's cross-examination of the defendant discloses that the defendant did not object to that questioning. We conclude that the defendant's claim does not involve an error so obvious that it affects the fairness of or public confidence in the judicial proceeding. In part I of this opinion, we discussed the strength of the state's evidence against the defendant at trial, including eyewitness testimony of the shooting and multiple confessions that the defendant made to family and friends. Accordingly, we conclude that he cannot prevail under the demanding plain error standard.

IV

The defendant's final claim is that he is entitled to a new trial because numerous instances of prosecutorial impropriety during the prosecutor's cross-examination of him deprived him of his due process rights. We disagree.

We first set forth the relevant law on prosecutorial impropriety. "In analyzing claims of prosecutorial impropriety, we engage in a two step process. . . . First, we must determine whether any impropriety in fact occurred; second, we must examine whether that impropriety, or the cumulative effect of multiple improprieties, deprived the defendant of his due process right to a fair trial. . . . To determine whether the defendant was deprived of his due process right to a fair trial, we must determine whether the sum total of [the prosecutor's] improprieties rendered the defendant's trial fundamentally unfair, in violation of his right to due process. . . . The question of whether the defendant has been prejudiced by prosecutorial [impropriety], therefore, depends on whether there is a reasonable

likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Internal quotation marks omitted.) *State* v. *Salamon*, 287 Conn. 509, 551–52, 949 A.2d 1092 (2008). The burden is on the defendant to satisfy both of these analytical steps. *State* v. *Payne*, 303 Conn. 538, 562–63, 34 A.3d 370 (2012). With these standards in mind, we turn to the merits of the defendant's claim.

The defendant contends that the prosecutor engaged in the excessive use of leading questions during his cross-examination. We reject this claim of impropriety. Section 6-8 (b) of the Connecticut Code of Evidence restates the general rule that leading questions are not proper on direct or redirect examination of a witness but are proper on cross-examination or recross-examination. See C. Tait & E. Prescott, Connecticut Evidence (5th Ed. 2014) § 6.20.2, p. 368. The commentary accompanying § 6-8 (b) of the Connecticut Code of Evidence explains that "[a] leading question is a question that suggests the answer desired by the examiner in accord with the examiner's view of the facts." Conn. Code Evid. § 6–8 (b), commentary. "Although questions asking for 'yes' or 'no' answers are frequently leading, and those phrased in a neutral alternative ('whether or not') are generally not leading, form is not controlling." C. Tait & E. Prescott, supra, § 6.20.2, p. 368.

With respect to the prosecutor's cross-examination of the defendant, we are not persuaded that the conduct was improper. The record disclosed that the challenged line of questioning was standard cross-examination during which the prosecutor asked the witness to confine his responses to "yes" or "no" answers.[6] Having concluded that the defendant has not shown that the prosecutor's use of leading questions on cross-examination was improper, we need not examine whether the defendant was deprived of his due process rights. Accordingly, we reject the defendant's claim that his due process rights were violated by the prosecutor's conduct.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] The court ordered: "I would advise counsel that should an offer be made in regard to this issue, the court should be notified so that the issue can be taken up outside the presence of the jury."

[3] On appeal, the defendant challenges the following examination:

"[The Prosecutor]: [H]ow did you go about speaking to [the defendant], once he had been warned and then waived his rights?

"[Poore]: Well, we basically explained why we were there. We explained the charge . . . that he was being charged with and . . . specifically accused him of the murder of [the victim]. And he didn't deny it.

"[The Prosecutor]: Let me . . . ask you to rephrase that. When . . . you accused him of murder, did he say yes or no?

"[Poore]: He . . . didn't deny it.

"[The Prosecutor]: Did he . . . just not respond?

"[Poore]: Right.

"[The Prosecutor]: Okay. So he didn't say yes, he didn't say no. He just

didn't respond.

"[Poore]: Correct."

[4] After briefs were filed in this case, this court released its opinion in *State* v. *Holmes*, supra, 176 Conn. App. 190–91. This court ordered the parties to address at oral argument the impact of the *Holmes* decision on the defendant's claim of a *Doyle* violation.

[5] The defendant also claims that his counsel's use of uncharged misconduct and past conviction evidence was improperly admitted and prejudicial to him. We do not reach this issue on appeal.

[6] The following colloquy between the defendant by the prosecutor on cross-examination is illustrative of the kind of questioning the defendant complains violated his due process rights:

"[The Prosecutor]: Let me just ask you a question though. You indicated, I believe, that you had been to Rumors Bar one time back in 2002. Isn't that right?

"[The Defendant]: It was around then.

"[The Prosecutor]: Okay.

"[The Defendant]: 2001, 2002, maybe.

"[The Prosecutor]: Just that one time prior to that.

"[The Defendant]: I mean, I've walked by it before, but I've never been in it until then.

"[The Prosecutor]: Yes or no, sir. Had you been to Rumors Bar, to your recollection more than one time?

"[The Defendant]: Inside?

"[The Prosecutor]: Yes or no?

"[The Defendant]: Inside?

"[The Prosecutor]: To the bar.

"[The Defendant]: Oh.

"[The Prosecutor]: Yes or no?

"[The Defendant]: No.

"[The Prosecutor]: Okay. But you are familiar with the Boswell Avenue area. Isn't that right?

"[The Defendant]: Yep. Yes, I am."

---